**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,
              Plaintiff,
    v.

**REPORT AND**
**RECOMMENDATION**
18-cr-6061-DGL-JWF

DAVID ROY JONES,
              Defendant.

---

### Preliminary Statement

On May 1, 2018, a federal grand jury returned an Indictment against David Roy Jones ("the defendant" or "Jones") charging Jones with two counts of production of child pornography in violation of 18 U.S.C. §§ 2251(a) and 2252 occurring on January 13, 2004 against "Victim 1", and on July 9, 2006 against Victim 1 and "Victim 2". Docket # 13. The Indictment also contains a forfeiture allegation directing the defendant to forfeit any devices used in connection with the production of child pornography pursuant to 18 U.S.C. § 2253(a)(1), (3). Id. Presently before the Court are the defendant's pretrial omnibus motions.[1] During the motion hearing, the Court resolved most of the defendant's motions. The following is my Report and Recommendation regarding the defendant's remaining pretrial applications.

### Relevant Facts

The investigation of the defendant began in Hamblen County, Tennessee. The Sheriff's Office in Hamblen County received a

---

[1] By Order of Hon. David G. Larimer, United States District Judge, dated May 2, 2018, all pretrial matters in this case have been referred to the Court pursuant to 28 U.S.C. § 636(b)(1)(A)-(B). See Docket # 14.

1

complaint from the mother of a female child victim alleging that Jones got her daughter and her daughter's friend "drunk and high" and then took "nude" photos of the two minors. See Docket # 25-1, at 7, Docket # 26-1, at 8, 10. As a result of the mother's allegations, and after interviewing and obtaining statements from the two minor victims, Hamblen County Detective Sergeant Jim Brooks (hereinafter "Det. Brooks") applied for and obtained six separate search warrants for property and locations associated with the defendant. See Docket # 25-1, at Exs. C-G; Docket # 26, at 16.[2] The issuing judge was the Hon. John Dugger. Execution of these warrants led to the arrest of Jones on state charges of sexual exploitation of minors.

The federal investigation into the defendant began in March 2017 when a victim residing in the Western District of New York contacted the FBI after learning that Jones had been arrested in Tennessee. The victim was interviewed by the FBI and stated that Jones had produced child pornography of her when she was between 13 and 16 years old. The FBI contacted Det. Brooks and learned

---

[2] The Tennessee search warrants were as follows: (1) a June 29, 2016 warrant for a search of the defendant's unknown cellular devices; (2) a June 30, 2016 warrant for a search of the defendant's home for any digital and/or electronic devices; (3) a July 1, 2016 warrant for a search of the defendant's vehicle; (4) a July 5, 2016 warrant for the search and seizure of six cellular devices; (5) a July 5, 2016 warrant for a search and seizure of a Dell Inspiron laptop computer and a Samsung 80 GB hard drive; and (6) a July 25, 2017 warrant for the search and seizure of eight electronic devices, including the same Dell Inspiron laptop and Samsung hard drive, two Kodak picture cards, two compact flash drives, and two SD cards. See Docket # 26, at 4-12.

that photographs of the local victim were discovered as a result of the search warrants executed in Tennessee. See Docket # 30, at 10. Thereafter, two federal search warrants were issued in connection with the federal investigation. See Docket # 25, at 7. The federal warrants were issued on May 2, 2017 for a search of a Kodak DC215 digital camera and storage card within the camera, and on November 28, 2017 authorizing the search of the Dell Inspiron laptop and Samsung hard drive that had been the subject of two prior state warrants but had not been searched after being seized in Tennessee. See Docket # 25-1, at Ex. H.

On July 14, 2017, the defendant pled guilty in Hamblen County to two counts of Sexual Exploitation of a Minor in violation of Tennessee Code Annotated § 39-17-1003. Docket # 30-1, at 2. On September 1, 2017, while Jones was serving a two-year prison term for the state conviction, a federal criminal complaint charging him with violations of 18 U.S.C. § 2251(a) and § 2252(a)(5)(b) was filed in the Western District of New York. Docket # 1. Pursuant to a Writ of Habeas Corpus ad Prosequendum issued on September 13, 2017 (Docket # 3) Jones was transported to the Western District of New York to face the federal charges. After plea negotiations failed, the defendant was indicted on May 1, 2018, and after several requests for extension, defense motions (Docket # 25) were filed on October 10, 2018.

The government filed a Notice of Intent to Use Evidence procured from all the search warrants except the May 2, 2017 federal warrant.[3] Docket # 18. Thereafter, the defendant moved "to suppress all evidence searched and/or seized" pursuant to the warrants issued in Tennessee, and to "suppress all evidence that flows therefrom, including any information or tangible property recovered pursuant to the search warrant issued by this Court on November 28, 2017". Docket # 25, at 8. Thus, the critical issue is whether Jones' Fourth Amendment rights were violated as a result of the execution of the Tennessee search warrants signed by Judge Dugger. Id. A motion hearing was held on January 2, 2019. The Court requested additional briefing from the defense to address issues raised by the government at the motion hearing, including the applicability of the good faith exception to the exclusionary rule. See Docket # 33.

## Discussion

The defendant challenges the sufficiency of the contested state warrants on the grounds that they each lacked particularity and probable cause as required by the Fourth Amendment. The federal warrant is challenged on the basis that any evidence procured under it is "fruit" of the poisonous state warrants. Although the government does not concede that the state warrants

---

[3] Hereinafter, the November 28, 2017 search warrant will be referred to as the "federal warrant".

4

were deficient, it argues that (1) even if the warrants issued by Judge Dugger were somehow defective, suppression of the evidence seized is not required pursuant to the good faith exception to the exclusionary rule; and (2) the defendant "has waived and abandoned his Fourth Amendment rights with respect to the specific evidence at issue." See Docket # 30, at 2. Although I disagree with the government's argument that Jones "waived" his right to raise a Fourth Amendment violation in this federal prosecution, I nevertheless conclude that he is collaterally estopped from doing so. For this reason, I recommend that Jones' motion to suppress be denied.

In reaching this conclusion, I rely on the Second Circuit's decision in United States v. Gregg, 463 F.3d 160 (2d Cir. 2006), where the chronology of filing of state and then federal charges is similar to the sequence of events here. In Gregg the defendant was caught attempting to ride a subway by using a reduced fare card "normally issued only to the elderly or disabled." Gregg, 463 F.3d at 162. During the process of being arrested for illegal use of the fare card, Gregg was patted down and a semiautomatic pistol was found in his waistband. Gregg was initially charged with criminal possession of a weapon in the third degree, but the grand jury did not indict him on that charge and he ultimately resolved the criminal case by pleading guilty in state court to a charge of criminal impersonation. Thereafter, a federal grand

jury indicted Gregg for being a felon-in-possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Prior to trial, Gregg moved to suppress the gun, arguing that the police lacked a reasonable suspicion to believe he had engaged in criminal behavior prior to searching him. The district court did not reach the merits of Gregg's suppression motion. Instead, it held that by pleading guilty to the criminal impersonation charge in New York State court, Gregg had "waived" any Fourth Amendment challenge he had to the seizure of the weapon in federal court. Gregg went to trial and was convicted. On appeal, the Second Circuit affirmed the conviction but held that "Gregg did not waive his right to challenge the seizure of the gun, and that the district court should have addressed on the merits Gregg's motion to suppress." Id. at 166.

The reasoning behind the court's decision in Gregg is dispositive of Jones' motion to suppress. The issue, according to the Second Circuit, was whether "Gregg's plea of guilty to the state charge of criminal impersonation effectively waived any Fourth Amendment challenges to the subsequent felon-in-possession charge stemming from the same stop". Id. at 163. Relying on the Supreme Court's decision in Haring v. Prosise, 462 U.S. 306 (1983), the court in Gregg explained that "a guilty plea does not 'waive' constitutional challenges so much as it conclusively resolves the question of factual guilt supporting the conviction, thereby

6

rendering any antecedent constitutional violation bearing on factual guilt a non-issue." Gregg, 463 F.3d at 164.

> [A] counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it *quite validly* removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established.

Id. (quoting Menna v. New York, 423 U.S. 61, 62 n.2 (1975)). Accordingly, a guilty plea "will not waive [a] defendant's right to collaterally allege[] Fourth Amendment violations." Id. at 165. Instead, "the preclusive effect of a guilty plea entered in state court upon subsequent federal proceedings is determined on the basis of collateral estoppel and the full faith and credit statute." Id. Applying collateral estoppel principles to Gregg's state court conviction for criminal impersonation, the court held that Gregg should not have been barred from "challenging the seizure of the gun on Fourth Amendment grounds" in the later initiated federal prosecution. Id. at 165-66. "The legality of the firearm seizure simply was not at issue when Gregg pleaded guilty to criminal impersonation." Id. at 166.

Jones cannot take comfort from the finding in Gregg that there was no waiver or collateral estoppel of the defendant's right to assert his Fourth Amendment rights in the subsequent federal

prosecution. For the court also explained under what circumstances collateral estoppel <u>would</u> have foreclosed Gregg from raising a Fourth Amendment challenge to police conduct:

> Were Gregg challenging law enforcement's conduct leading up to his surrender of his mother's Metrocard, i.e., the discovery of the evidence supporting the criminal impersonation charge to which he pled guilty, then under the <u>Tollett</u> line of cases <u>Gregg's Fourth Amendment claims would be foreclosed</u>. This is because the plea conclusively establishes his factual guilt on the impersonation charge; how the supporting evidence was recovered is irrelevant. See <u>Menna</u>, 423 U.S. at 62 n.2. That is not the case here. In the instant case, Gregg challenges law enforcement's seizure of the firearm *after* the recovery of the misused Metrocard. Therefore, the validity of Gregg's criminal impersonation conviction could not be affected by the alleged Fourth Amendment violations he asserted on the federal felon-in-possession charge.

Gregg, 463 F.3d at 166 (emphasis added). This explanation is particularly problematic for Jones. Represented by counsel, Jones entered a guilty plea to a felony crime that encompassed the knowing possession of the same images of child pornography that were seized pursuant to the search warrants signed by Judge Dugger in Tennessee. The government has submitted the Tennessee plea documents confirming that Jones was charged with sexual exploitation of a minor involving "more than fifty images" and entered a plea of guilty to a Class D felony of Sexual Exploitation of a Minor involving "less than fifty images." See Docket # 30-1, at 2. While the "the legality of the firearm seizure simply was not at issue when Gregg pleaded guilty to criminal

impersonation" (Gregg, 463 F.3d at 166), the legality of the seizure of the child pornography images was clearly "at issue" when Jones pleaded guilty to sexual exploitation of a minor involving less than fifty images in Tennessee. Unlike the defendant in Gregg, the Fourth Amendment violation asserted here in federal court is not "factually irrelevant" to Jones' state court guilty plea. Because the evidence Jones seeks to challenge here in federal court is the same evidence that supported the Tennessee sexual exploitation charge to which he pleaded guilty, Jones' Fourth Amendment claim is "foreclosed." Id. As the Second Circuit in Gregg explained: "This is because the plea conclusively establishes his factual guilt" on the sexual exploitation charge; "how the supporting evidence was recovered is irrelevant." Id. Hence, Jones' plea "renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt." Menna, 423 U.S. at 62 n.2. Under Gregg's rationale, Jones is collaterally estopped from now seeking to challenge law enforcement's conduct in obtaining the images that formed the basis for his state court plea.

In making their "waiver" argument, the government does not cite to any cases aside from Gregg. This Court has looked for similar cases in our Circuit addressing the impact of a plea of guilty on a criminal defendant's ability to raise a Fourth Amendment challenge to a subsequent federal prosecution arising

from the same seizure and could find none.[4] However, Magistrate Judge Schroeder recently applied Gregg's collateral estoppel reasoning in a similar context and reached the same conclusion. In United States v. Gil, No. 15-CR-143-V, 2018 WL 4627135 (W.D.N.Y. Jan. 3, 2018), report and recommendation adopted in part, 313 F. Supp. 3d 441 (W.D.N.Y. 2018), the defendant Gil was arrested on drug charges by local police in California and made incriminating statements to the police. Three months after his arrest, Gil, while represented by counsel, entered a guilty plea in California Superior Court to possession with intent to sell a controlled substance. Thereafter, Gil was indicted in the Western District of New York on federal charges of engaging in a continuing criminal enterprise, money laundering, and conspiracy to possess with intent to distribute heroin. Gil moved to suppress the incriminating statements he made to the local California police claiming they were involuntary and taken in violation of his Sixth Amendment right to counsel. Relying on the Second Circuit's

---

[4] The Court located two cases where a guilty plea in state court was followed by a federal criminal prosecution in which the defendant sought to challenge a search. In one, the court specifically did not decide the collateral estoppel issue. United States v. Farmer, 770 F.3d 1363, 1367 n.2 (10th Cir. 2014) ("Because the Government has not asserted such [waiver and collateral estoppel] arguments in this case, we have no occasion to address those issues here."). In the other, the court decided the issue on the basis of waiver. United States v. Black, No. 1:17-CR-00074(1), 2018 WL 883895, at *6 (S.D. Ohio Feb. 14, 2018) (because the suppression "motion was 'never considered' in the state proceedings, and, under Haring, the Court may not infer that Mr. Black's guilty plea acts as a waiver now in *these* proceedings" the court decided to address the merits of the defendant's motion to suppress).

10

decision in Gregg, Magistrate Judge Schroeder found that "given the circumstances of the defendant's prior guilty pleas," Gil was collaterally estopped from challenging "the admissibility of his statements in this case." Gil, 2018 WL 4627135, at *3. Judge Schroeder found that Gil's guilty plea "rendered any antecedent constitutional violation bearing on factual guilt," including his interrogation, a "non-issue." Id. at *3 (quoting Gregg, 463 F.3d at 164). Accordingly, Judge Schroeder recommended that Gil's motion to suppress his custodial statements be denied.[5] Id. For the same reasons, I am compelled to recommend that Jones' motion to suppress the images that were seized pursuant to the Tennessee search warrants be **denied**.[6]

---

[5] United States District Court Judge Vilardo adopted in part Magistrate Judge Schroeder's Report and Recommendation. Judge Vilardo agreed that because Gil pled guilty to drug charges in California (and also to a violation of federal supervised release), "Gil may be precluded from contesting certain admissions he made." Gil, 313 F. Supp. 3d, at 446. However, because the statements Gil sought to suppress in federal court might be "broader than, and include admissions in addition to, the facts necessarily included in his [state court] guilty plea," Judge Vilardo directed that a hearing "be conducted during the trial after the government submits exactly what statement or excerpts it proposes to submit to the jury." Id. Here, by contrast, there is no claim that the images for which suppression is sought are broader or different than the images seized pursuant to Judge Dugger's search warrants. Indeed, the government has represented that the images that Jones seeks to suppress in this federal court prosecution are the very same images that were seized in Tennessee and that formed the basis for Jones' state court guilty plea. In issuing this Report and Recommendation, this Court has relied on that factual representation.

[6] In some respects, the reasoning of Gregg relevant to this case seems counterintuitive. The court in Gregg relied on the Supreme Court's decision in Haring v. Prosise, 462 U.S. 306 (1983). In Haring, the plaintiff pled guilty to drug charges and then while incarcerated commenced a § 1983 action based on a claim that the search of his apartment by police was unlawful. The Supreme Court stated that a defendant's decision to plead guilty "may have any number of other motivations" and it was "impermissible" to assume his reason for doing so was based on a determination "that he would be unable to prevail" on a motion to suppress. Id. at 318. The Court held that because the legality of the search was "not actually litigated" in the criminal case and "none of the issues

11

Remaining Motions: The defendant's challenge to the federal search warrants was limited to his argument that the items seized must be suppressed as the "fruit" of the poisonous state court search warrants. Having found that Jones is foreclosed from challenging the state court warrants in this federal prosecution, there is no basis to suppress the federal court search warrants.

Finally, the defendant has requested disclosure of materials required pursuant to Brady v. Maryland and its progeny. The government having acknowledged its disclosure duties and representing to the Court that is has complied with its obligations under "discovery, Brady, and related matters" (Docket # 26, at 22), this request is deemed **moot**. The parties know that if a discovery or Brady issue arises, they can schedule an immediate conference with this Court.

## Conclusion

It is my Report and Recommendation that the defendant's motion to suppress evidence be **denied**. The defendant's discovery and Brady requests are deemed **moot**.

SO ORDERED.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated:   April 11, 2019
         Rochester, New York

---

in the § 1983 action" were "'necessarily determined' in the criminal proceeding" the plaintiff was not collaterally estopped from alleging an unconstitutional search in his civil rights lawsuit. Id. at 316.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York.[1]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. See, e.g., Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." Failure to comply with the provisions of Rule 59(b)(2) may result in the District Court's refusal to consider the objection.

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

_____
Jonathan W. Feldman
United States Magistrate Judge

Dated:   April 11, 2019
         Rochester, New York

---

[1] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. United States v. Andress, 943 F.2d 622 (6th Cir. 1991), cert. denied, 502 U.S. 1103 (1992); United States v. Long, 900 F.2d 1270 (8th Cir. 1990).